Good morning, Mr. Deming. Thank you, Your Honor. For the record, my name is Stuart Deming. I represent the appellant, Samara Simmons. I'd like to reserve three minutes for rebuttal. And at the outset, I am suffering from somewhat of a hearing disability due to a bad cold. So if I ask for clarification, it's not due to a five FOIA requests. Three were issued in the period of 2016. One for the Department of State's medical unit, a second relating to the unit involving human resources, and a third relative to the consulate in Juarez, Mexico. Two more were issued in 2019. One was for the purpose of securing a verification of a settlement that had taken place in March of 2019. That was prompted by the prior indication of the State Department that the only way for my client to secure access to her security file was through a FOIA request. Secondly, the other 2019 request arose out of a request for an IG report that was issued. The complaint sought the records that had been referred to the main unit at State, IPS, or records that underlie the report of the IG. So essentially we have five requests that are at issue. My focus today is principally on the issue of causation. Two other requests, the one that relates to the 2016 request of the consulate in Mexico, and the May 2019 request for the DS security file were, in my opinion, not addressed by the district court. And opposing counsel in his response has not indicated otherwise. The second issue in terms of eligibility is the standard that was applied by the district court. That standard district court relied on solely related to delay as the factor that it had to look to in terms of determining causation. It did not include unilateral or discretionary disclosures that took place on the part of the State Department. And again, opposing counsel has not, in his response, has not suggested otherwise in terms of what the standard should be. Why that is relevant is that the district court made findings of four supplemental productions that took place after it had presented in its filings that it had completed production of all responsive records. Those supplemental findings indicated that the findings were at the behest of my client, Ms. Simmons. Those findings, in my view, are categorically contrary to its holding that there was lack of causation. Based upon this court's prior holdings, causation is reflected when there's been a discretionary or unilateral change in the position on the part of the government. But does your argument discount that there were a substantial amount of documents that were produced prior to the filing of the complaint? In that regard, we totally disagree with the district court. The judicial admissions filed on the part of the department indicated that there was a single pre-litigation disclosure and that related to a HR request and it was that was made in December 10th of 2018. Consistently, the filings both in the joint status reports as well as the answers on the part of the department were consistent in that regard. The court found otherwise. It relied upon a declaration that we believe was fatally flawed in that respect. But that doesn't answer my question about did you receive a substantial amount of documents prior to the filing of the complaint. As to the request at issue, there was no responses other than the December 10th 2018 response. Now the prior disclosures, but for example, as to the medical request, there was a response but it responded to a different request, not the request that's currently before the court. But there was the disclosure of the same information as was sought in the other request, second request. That's correct, Your Honor. It was a partial response as to that. So if what you just said makes me uncertain of the answer that you're giving, if you request a particular type of information, let's say my own medical records in one request and then later ask for something different but I received my own medical records, the first request has been satisfied even though it comes in response to a request or identical. What happened is the State Department refused to provide her with her personal medical records and what State Department insisted, which is highly unusual from my point of view, they insisted upon receiving a FOIA request to get her own personal medical records. So what happened is the same request that had been previously issued in 2016 was used for the September 2016 request. The medical records were produced as to that second later request that was made at the behest of the State Department. The first request was already there. So the request asked for both personal records as well as any records relating to what had happened to this woman in terms of the illegally obtaining her medical records. We never received the second category until after the complaint was filed. But at that point, or at least ultimately, every request was fulfilled. The question, as you say, is causation. Yeah, ultimately every request was fulfilled in that regard. One, of course, one fact even as for the medical records, we didn't receive some of the medical records until 2023. There were like 26 pages of documents that were turned over. So you filed before 2018 a statement that the State Department produced over a thousand pages. So were any of those pages in response to the five FOIA requests that you're speaking of? Yes, yes, yes. Okay, and then your complaint was not filed until July 11, 2019. So you've gotten a thousand pages before your complaint is filed. I think I misunderstand the question. Those a thousand pages that are referenced actually referred to an administrative hearing document. It was a status report relating to an EEO case. It was not the joint status report filed in this case. So there's a misunderstanding in terms of what actually happened. Those thousand documents were produced pursuant to a request made, a 2016 request that was made involving records of the diplomatic security. That was before the settlement was reached. After the settlement, we went back and said we need to see what happened. Did the funds records according to the terms of the agreement? That was 2019. Have I answered your question? Yes. Yeah, I mean that document has been misinterpreted as reflecting what had happened in this particular matter. It that was produced solely to show that unrelated documents were produced unresponsive to these requests at issue here. It's very unusual for anyone to publicly release their medical documents. So I expect the answer to this to be no, but I just want to make sure. There's not an intention to publicly release the medical documents, right? I mean you don't plan to release the medical documents? Absolutely not. In terms of, in terms we put, it's been cited by opposing counsel's brief, we put the government on notice that if it, as these documents are turned over, some of them were highly personal and that steps needed to be taken in order to protect the... And that makes total sense. I would do the same. My next question though is, why does the public have an interest in a FOIA request for documents the public will never see? Well, as to the substance of the medical records, that's fair, although the record would show that records were produced by the Justice, through the Justice Department, by email that actually contained these records. But as to the ultimate question I think you're asking, what we were trying to achieve is to show the dynamics associated with what had happened. These records were improperly taken or requested from the medical provider in New Jersey against the advice of lawyers at the State Department. And they were brought back and then they were disseminated to various units within the department. And that's the basic thrust of one of the things we've been trying to achieve, is to figure out what exactly had happened in that particular case. Even if we were to agree with you that there was a violation of FOIA, you're asking obviously for the attorney's fees. Is that something that we would review or is that something that would go back to the district court? Our position is that that it would go back to the district court. Our view is that the issue of entitlement goes back to the district court, which this court had previously held that entitlement issues are generally first addressed at the district court level. We believe that there was causation and that that the next step is to reverse and to go back to the district court for both issues. And just to be clear, you are saying none of the thousand pages were related and that anything that you received only came after the complaint? The thousand pages were related. Let me be clear on that. Of those thousand pages, there may have been pages that were responsive to the HR request the December 10th, 2018. What occurred was there was trying to reach a settlement. So basically an understanding was reached between the and the lawyers, we will expedite this DS-2016 request so that you can go through those records and make a determination as to what is to be expunged. Within those thousand records, I believe a fair statement would be that the one request that the department has included in its answers to the pleadings was a response to the December 10th, 2018. So that set of documents would be within that a thousand pages. And that's approximately how many pages? 284, I believe, roughly. And so then there's also the issue about some of the delay being caused by COVID and also the sheer number of requests that there's just a backlog and that backlog still exists today. So you don't think that plays into their decision-making on how to process these claims? Well, it may have, but for example, COVID came after the complaints were filed. So all three complaints preceded COVID. As to the delay that took place after, they're the last supplemental production took place in April of 2023. And even in the state's own declaration, the cause was the fact that the internal units within the agency failed to work with one another. It was a lack of cooperation. It had nothing to do with workload, so on and so forth. The other supplemental productions that took place, we raised the issue of the question of whether their exceptions were appropriate. State changed its position and released the records. Those are classic indicia of causation. And now three of the four supplemental productions were done almost immediately once the issues were appropriately raised. Judge Childs, any other questions? Okay, thank you. Thank you. May it please the Court, my name is Assistant United States Attorney Demetre Giorgio for the United States. This Court should affirm the denial of attorneys' fees for two main reasons. First, this Court can apply its precedent in Cotton v. Hayman to affirm the District Court's denial of attorneys' fees because by her own admission, Ms. Simmons submitted FOIA requests in support for employment actions against the Department of State. And separately and independently, this Court can affirm the District Court's denial of fees because the District Court did not abuse its discretion when it found that the FOIA litigation did not cause the production of withheld records because the District Court found that State had made substantial pre-litigation productions which findings this Court reviews for clear error. Much of opposing counsel's submission today focuses on factual disagreements with the District Court. All those factual findings are reviewed for clear error and there is sufficient evidence in the record that substantiate the Court's findings, specifically the fact that there were not just one but seven separate productions that had been made of records, various responsive records, prior to the finding of the litigation. The District Court specifically found in analyzing the language of the various FOIA requests that those FOIA requests were overlapping and in certain instances identical. It then found that responsive records had been produced, crediting a declaration from the Department of State to that effect, looking at, sure, the answer from the Department of State but also to the joint status report submitted by the parties as well as evidence that Ms. Simmons had presented in her petition for fees. Crediting all of that evidence, the District Court found that there were substantial evidence in the record of prior productions and it found, as a matter of fact, that the litigation did not cause the production of records. That is sufficient under a clear error standard for this Court to affirm. Opposing counsel suggests that the District Court did not separately evaluate each record, each FOIA request. There are five of them. But we point to, first, how the parties presented their arguments, particularly how Ms. Simmons presented her arguments that treated all requests together in her fee petition as well as during the litigation below. And in the opinion on page 2 of the opinion, that is Joint Appendix 346, the District Court actually qualifies in how it is addressing, for example, the 2016 requests. And it begins by saying that there are three requests that were filed in 2016 and then in terms of the 2016 requests. And then when it conducts its analysis of page 8 and 9 of its opinion, it evaluates the language of the 2016 requests that were issued in this litigation against the different FOIA requests to which the State Department had responded and had asserted that it provided responsive records. And it said that those records were responsive to the 2016 requests. Opposing counsel also emphasizes judicial admissions that were presented in an answer in litigation. Adopting, first, the answer in a FOIA request is intended to preserve waivable defenses. It does not state the litigating position or the position of the Department of State or of any department of how it is processing the request. Again, there is a factual finding that State was already producing records when the litigation was initiated. The answer merely establishes the preservation of certain defenses in the first joint status reports filed after the case was already in the District Court. State clearly indicated that it is processing the request and there was no indication that there was any intent from the State Department not to release any records. But there is an additional reason why this court should reject the emphasis that plaintiff places on the answer, and that is found in Grand Canyon. In Grand Canyon, this court said that the mere initiation of litigation is not sufficient to establish possession. The complaint is the document that initiates litigation. The federal rules of civil procedure require an agency to respond to that complaint. Failure to respond can be can treat, can be read as admitting to the allegations in the complaint. And so, in a certain sense, then if we do it, then if we don't file an answer. If we file an answer, then we're responsible for, the agency's responsible for attorney's fees because it has taken a certain litigating position. If it doesn't file an answer, then the agency might be liable for injunctive relief, which is the typical remedy that a plaintiff seeks. And how many pages would you say produced prior to the filing of the complaint? The record is not entirely clear. There's not sufficient evidence that, at least I haven't been able to find. But do you think it was less than a thousand and closer to the almost 300 that plaintiff suggests? Again, Your Honor, that the record does not indicate exactly how many pages were responsive. The district court, however, did find that those prior productions were included records that were responsive to the prior requests that were issued here, and this court reviews that factual finding for clear error. But this court can also look to the entitlement, and Judge Walker, you asked the question of whether the public should be liable for fees when a plaintiff seeks records for their own benefit. It shouldn't, and that's what, that's precisely what Cotton said. When a plaintiff, and then this has reaffirmed that Maxim, for example, in Davi, when this court said those who seek documents for private advantage cannot deserve a subsidy as they benefit only themselves and typically need no incentive to litigate. Certainly there is a fourth element in the analysis of entitlement under Cotton, and that is the reasonable basis for withholding. The court did not, the court below did not address entitlement. It did not make specific findings as to the reasonableness, but this court can look to the district court's findings on the delays in the prior productions in its analysis under eligibility and import those factual findings into its analysis of entitlement, and therefore this court is then only left with the straightforward application of Cotton, which is a question of law in which this court can certainly make here, and it has done before in Cotton. So when the correspondence states that documents should be released in full, does that mean that they are included, or are they, is there a contemporaneous production, or a supplemental production that just keeps continuing? Can you repeat your question? If you have any correspondence that would suggest that documents have been released in full, is that a complete production, or is it a rolling production that there will be more documents to come? I think that would depend on the context. Certainly we maintain that there were, in this case, there were documents that had already been released pre- litigation and that there was an ongoing production of records. At the conclusion of the rolling productions, then the parties did engage in discussions of whether the productions were complete, whether certain withholdings should be waived. There was some disagreement over certain withholdings. There was also some disagreement over the completeness of the productions. Ultimately, all those questions were resolved by the parties without any court intervention. Indeed, the district court did not, other than decide the motion for fees and receive joint status report at certain intervals, the district court had no role in shepherding the parties through their discussions, and there's no indication that the litigation in any way contributed to the parties resolving their issues. Mr. Georgia, one of the first thing you said, related to circuit precedent, no fees in certain requests, is that, was that the preludes to the argument you've made about entitlement, or was that something else? That is to entitlement, yes, your honor, the case is caught. Okay, thank you. Three weeks ago, the Department of Justice announced that it thinks the Presidential Records Act is unconstitutional. Do you know if the department has a view on whether FOIA is constitutional? We have not argued that in our briefs, your honor. Any other questions? Thank you. I believe the question was asked as to when the department indicated that it had completed production. At A89 of our joint appendix, there's reference to joint status report that was issued or filed on May 23rd of 2023, and there in paragraph 4, it's asserted as of November 29, 2021, defendant's production is complete. And then the next four paragraphs identify the four supplemental productions that took place after the fact. Two of those related to a change in position as to exceptions. One was an accommodation, and the fourth was the addressing the delay of four years in order to find the documents related to both of the 2019 requests. As to the issue of the reference to the fact that the district court made, argued that there was an overlap in the productions of the 2016 request and that it took the position that the responses to the unlitigated 2016 request could be used as a basis for finding that there had been a response to the litigated 2016 request. This court in a case which I mispronounced, Colosac 73 Feds 3rd 389, basically took the position that in response to a FOIA request, a unit of an agency is only obligated to respond to that, to what's within that unit as opposed to the department at large. So I believe the district court erred as a matter of law in her interpretation. Lastly, there's reference made to entitlement that this court should dig into entitlement. The department relies on McKinley in indicating that this court can proceed and address entitlement. McKinley actually involved a case in which the district court did address entitlement. The district court skipped the issue of eligibility and went to the issue of entitlement. So in McKinley, when this court addressed it, it was not engaging in fact-finding on its own. It was reviewing what the district court had done in that particular case. Judge Giles, Judge Linsberg. Thank you. Thank you.
judges: Walker; Childs; Ginsburg